Belknap,
Jan. 4, 1916.

WILLIS H. REYNOLDS, *Adm'r, Ap't, v.* HERBERT J. JONES, *Ex'r, Ap'ee.*

Devise to the testator's wife, for life, with power of sale, "if at any time her property, including the income of said bequest, shall from any cause be so reduced as to be insufficient for her comfortable support,"—*Held,* that the word "property" did not mean income and that the contingency could not arise until the widow had exhausted her own property and the income from her husband's had become insufficient to support her.

In construing a devise, a grammatical error is corrected to effectuate the intention of the testator.

Whether a monument erected at the grave of a testator or intestate, as authorized by P. S., *c.* 189, *s.* 19, is suitable, and the expense incurred therefor reasonable, with in the meaning of that act, is to be determined in each case as a question of fact by a consideration of all the circumstances, including the amount of property left by the decedent, his position and standing, and the location of the monument.

PROBATE APPEAL, from the allowance of the account of Mary Jane Reynolds, executrix of the will of Hamilton Reynolds, filed by her executor, Herbert J. Jones. Transferred from the March term, 1915, of the superior court, by *Sawyer,* J.

Hamilton Reynolds died February 18, 1909, Mary Jane, his widow, died March 26, 1914. The inventory of Hamilton's estate showed personal property appraised at $6.50 and real estate at $1,350. The inventory of Mary Jane's estate was as follows: Household furniture $424, live stock $100, farming tools and utensils $50, and real estate $2,000—in all $2,574. Willis Reynolds was appointed administrator *de bonis non,* with will annexed, of the estate of Hamilton Reynolds April 21, 1914. He filed an inventory showing personal property of the value of $42.40 and real estate of the value of $1,400.

By Hamilton's will, his three sons, by his first marriage, were given one dollar each, and the residue was bequeathed to his "wife, Mary Jane, for life and from and [after] the termination of her said estate, to my sons, Charles H., Carey H., and Willis H., and their heirs," subject to the following limitation: "If at any time her property, including the income of said bequest, shall from any cause be so reduced as to be insufficient for her comfortable support, she is hereby authorized to sell so much of said property as her wants may require and apply the proceeds to her own maintenance."

Hamilton inherited from his brother, Daniel, twelve shares of national bank stock, the income of which went to one Trueworthy during his life. This stock came to the possession of Mary Jane after she filed her inventory. Under a license from the probate court, obtained without notice, she sold Hamilton's interest in this stock at public auction July 3, 1911, for $500.

The evidence tended to show that the annual income from Hamilton's property was about $84 gross, with taxes, water bills, insurance, repairs and loss of rents to come out of that; and that after his death, Mary Jane lived in her own house, and by taking boarders, working out, selling milk, and using the $500 received from the sale of the bank stock, managed to pay her living expenses, without having to sell either her home or the real estate left by Hamilton.

Sometime in 1912, Mary Jane sold a piece of sprout land which she owned, and from the avails paid some old notes that she owed, and with the balance bought a lot of land for $500, and in June, 1913, voluntarily deeded it to a relative. The court found as a fact that, unless Mary Jane was legally bound to sell either her homestead or the piece of sprout land, and apply the avails to her support before using any of the principal from her husband's estate, that she did need the $500 which she received from the sale of the bank stock, but no more, for her comfortable support, and allowed it on the appellee's account, and the appellant excepted.

Mary Jane erected a monument on a lot standing in her name, but in which were buried the remains of Daniel, Hamilton, and a small child of Hamilton's, and had their names inscribed thereon. Her name is also inscribed upon it. She paid $100 for it, and considering all the circumstances the court found the price was fair, and that such a monument was reasonably necessary, and allowed the price paid for it, and the appellant excepted.

*Oscar L. Young* (by brief and orally), for the appellant.

*Owen & Veasey* and *Charles B. Hibbard* (*Mr. Hibbard* orally), for the appellee.

PLUMMER, J. If Hamilton's will required his wife to sell and use her own property for her support before selling and using his, then the $500 obtained from the sale of his interest in the bank stock should not be allowed on her account; for at the time of the sale she was possessed of her homestead, inventoried after her death three

years later at $2,000, and also sprout land valued at something more
than $500. The exception to the allowance of the $500 on the ac-
count therefore brings before us for interpretation the following
sentence in Hamilton's will: "If at any time her property, including
the income of said bequest, shall from any cause be so reduced
as to be insufficient for her comfortable support, she is hereby auth-
orized to sell so much of said property as her wants may require and
apply the proceeds to her own maintenance." The appellee contends
that by the words "if at any time her property" the testator meant
and intended "if at any time her income"; and that Mary Jane
could sell the testator's property and use the proceeds for her sup-
port before selling her own, if the income from her own and the
testator's property became insufficient for her comfortable support.

The words used by the testator do not warrant such an interpre-
tation. There is no ambiguity in the use of the word "property"
by the testator. Its import is plain and distinct. Property does
not mean income. It has been defined to be "the right of any per-
son to possess, use, enjoy, and dispose of a thing." *Wynehamer* v.
*People*, 13 N. Y. 378, 433; *Smith* v. *Furbish*, 68 N. H. 123, 144.
"Income is that gain or recurrent benefit which proceeds from labor,
business, or property." Webster's New Int. Dict., 1089. "If the
meaning of the words he has used is clear, they must be adopted,
whatever the inclination of the court may be." 1 Red. Wills 442;
*Perkins* v. *Mathes*, 49 N. H. 107, 110. "When the language of a will
is plain and unambiguous, no intention on the part of the testator is
to be sought after other than the one so expressed." *McAllister* v.
*Hayes*, 76 N. H. 108, 111; *Greenough* v. *Cass*, 64 N. H. 326.

If the testator meant her income instead of her property, as the
appellee contends, it is not easy to understand why he did not so
state. When the word "property" was written, he evidently had
income in mind and appreciated its meaning; for income is the third
word after property, and it is there used understandingly. If he
intended her income and not her property, it would have been the
natural thing for him to have so expressed himself, especially in
view of the fact that he uses income later in the same line. The
apparent deliberate choice of the word "property" indicates that
he meant literally what he said when he used that term.

If the words of the will were ambiguous and their meaning uncer-
tain, evidence of the testator's intention to require his wife to sell
and use her own property before selling his could be found in the
testator's family relationship. Hamilton had three sons by his first

wife, to whom he gave one dollar each and what should be left of his estate after his wife's death. He desired his property that was not needed to support his wife to go to his own children; and to enhance the probability of their receiving any of it, he provided that his wife should not sell and use his property until she had sold and used her own. This provision could work no hardship upon her, for she could dispose of and expend all of his property for her support, if her wants required it, after she had expended her own. It would simply prevent her from disposing of his property and retaining her own to go at her death to her heirs or devisees—a result that the testator apparently desired to avoid, as he naturally would, considering that he had three children and his wife none. What the relations of Mary Jane were with the sons of her husband, that might have influenced him in making his will and thus have been evidence of his intention, do not appear, except that she sold her sprout land, and after paying some debts, instead of using the balance for her support, she bought a piece of real estate and gave it to her own relatives.

The appellee calls attention to this clause, "shall from any cause be so reduced as to be insufficient for her comfortable.support," and says it is very peculiarly worded, if the testator intended to bind his wife to use her principal for her support before she could sell any of his. It is true that the clause is not well drawn. More apt and appropriate words might have been used than "reduced" and "insufficient." But it was the testator's way of saying that when his wife's property was exhausted and the income from his would not support her, then she might sell and use his property. When we speak of one in reduced circumstances, we mean that he is impoverished, in want, that he has no property. It was evidently in this sense that the word "reduced" was used by the testator.

The testator authorized his wife "to sell so much of said property as her wants may require." "Said property," as written, refers grammatically to her property. This is manifestly an error, as the testator by the words "said property" intended his property, and it is construed that "said property" means "my said property." Such an error is corrected to effectuate the intention of the testator. *Hall* v. *Blodgett,* 70 N. H. 437; *Peaslee* v. *Rounds,* 77 N. H. 544.

The appellant's second exception is to the allowance of $100 paid by Mary Jane, as executrix of Hamilton's estate, for a monument erected at his grave. The statute provides that "administrators of estates actually solvent may erect suitable monuments at the graves

of the testators or intestates, and the reasonable expense thereof shall be allowed them on settlement of their accounts." P. S., c. 189, s. 19. The appellant relies upon *Lund* v. *Lund*, 41 N. H. 355, to sustain his exception. This case was an appeal from the probate court to the supreme judicial court, and one of the reasons for the appeal was that the administrator had paid an excessive amount for a monument erected at the grave of the intestate. The property of the estate was about $3,000 in value. The court decided that the amount paid for the monument was excessive and refused to allow it on the account. In the opinion the following statement was made: "We think that in estates of the amount of this, a proper rule should be that the administrator should furnish stones or monuments at an expense varying from fifteen to thirty dollars—not to exceed the latter sum in any case; and that this is all that should be allowed in the present case."

The decision of the court was simply a finding of fact that the monument was unsuitable in that it was too expensive. It is true the court states in the opinion what the rule as to the expense of monuments ought to be in similar cases, and that it should not exceed a certain amount. This statement, however, was really gratuituous. The only questions before the court under the statute were as to the suitableness of the particular monument and the reasonableness of its price. The decision, being one of fact, does not control or affect the findings of fact in other like cases. Whether a monument is suitable and the price reasonable must be determined in each case by a consideration of all the circumstances when the case is presented; and the fact that it had been found in some previous case that a monument was unsuitable or the price unreasonable would be of very little aid in reaching a decision. The amount of property left by the testator or intestate at whose grave the monument is erected, his position and standing, and the location of the monument, are the principal circumstances to be considered in determining its suitability and the reasonableness of the expense. The trial court in this case has found, in effect, that the monument was suitable and the expense thereof reasonable, and these findings of fact cannot be disturbed. *Mooney* v. *Railroad*, 65 N. H. 670; *Pinkham* v. *Glover*, 69 N. H. 463.

The first exception is sustained and the second exception is overruled.

*Case discharged.*

All concurred.