Rockingham, ⎱
Nov. 6, 1923. ⎰

### HARRY G. BRIERLEY *v.* HARRIET BRIERLEY & *a.*

Under Laws 1893, *c.* 19, a petition lies for an order of sale of real estate held "by any person who has an estate in possession, remainder or reversion" therein; but the court has no power to compel distribution of the proceeds of the sale and the trustee appointed under section 1 will hold them for the benefit of the persons interested.

The petition is required to establish the necessity or expediency of such an order of sale upon all the competent evidence, including the advantages and disadvantages of such a sale to all parties interested.

By the words "pine growth" a testator intended the trees exclusive of the land.

PETITION, under P. S., *c.* 243, and alternatively under Laws 1893, *c.* 19, for the sale of land to which the parties hold title under the terms of a will which provides: "First. To my son Harry . . . [the plaintiff] I . . . devise . . . my farm in Stratham, including all my real estate in said Stratham, excepting the pine growth on the north side of the road leading to the Squamscott River: to have and to hold for the term of his natural life, and from and after his death I . . . devise the same to my other children [parties defendant] in equal shares, the issue of any child that may then have deceased to take the same share as such child, if then living, would have taken. But to my wife Harriet . . . [also a defendant] I devise and bequeath the use of my dwelling-house and furniture for the term of her natural life, together with such use of the windmill and water supply as is reasonably incident to the use of the house; and I also bequeath to her the use of the home-garden and home-orchard, for and during her lifetime. . . . Third. Upon the death of my wife, I bequeath all my personal estate then remaining . . . and said pine growth, to be divided equally among my other [*i. e.* excepting the plaintiff] children, Annie . . . Ben . . . , Wilfred . . . , and Philip, . . . ; and the issue of such of them as may have deceased, the issue of any such deceased child to take the same share which the parent would have taken if then living. . . ." The pine growth stands upon an outlying tract some distance from the other portions of the farm.

The petitioner seeks authority to sell the real estate, subject to the rights of the widow Harriet, alleging that his interest therein is of small value as compared with his interest in the value as computed by the actuaries' tables. The defendants deny this and say

that such a sale would be inequitable and injurious to their interests and contrary to the intent of the testator. By demurrer the defendants raise the following questions of law, which are transferred as of legal importance by *Allen,* J., without a ruling, to wit: "1. May the plaintiff maintain the proceedings as a petition for partition? 2. May he maintain it as a proceeding under Laws 1893, c. 19? 3. If he may proceed under either 1 or 2, has he any interest in the land on which the pine growth stands? . . . 5. In the event of a sale is the plaintiff to receive from the proceeds the present value of his interest as computed by actuaries' tables or are the proceeds to be held by a trustee, paying the net income to the plaintiff for life and the principal upon his decease to the persons then entitled as remaindermen?"

*Scammon & Gardner,* for the plaintiff.

*Arthur O. Fuller* and *Dwight Hall* (*Mr. Fuller* orally), for the defendants.

SNOW, J. The petitioner, subject to the widow's interest, took an estate for his life in the testator's farm except the "pine growth." The other defendants took a vested remainder in all the real estate; their estate in the pine growth to take effect in possession upon the death of the widow, and their estate in the rest of the farm to take effect in possession upon Harry's death subject to the widow's rights if she survived him. The testamentary provisions, for the purposes of this case, present the characteristic instance of an estate for life with remainder over. There is no suggestion of a trust. The primary questions presented, therefore, are whether under P. S., c. 243, as amended by Laws 1913, c. 21, or under the Laws of 1893, c. 19, a petition by a tenant for life lies (1) for the sale in fee of the *res* covered thereby, and (2) for the distribution of the proceeds between the life tenant and the remaindermen.

Prior to 1893 there was no statutory provision in this state for the compulsory sale in fee of the *res* in such a case, upon petition of either the tenant or remainderman. P. S., c. 243, providing for the partition of real estate held in possession in reversion or as a vested remainder, contemplated partition only as between those holding with others estates of the same class or duration, and not as between the holder of a particular estate on the one hand and the holder of the reversion or remainder on the other hand. *Brown* v. *Brown,* 8 N. H. 93, 95.

The legislature by Laws 1893, c. 19, s. 1, provided: "When real

estate is subject to a contingent or vested remainder, executory devise or power of appointment, the supreme court for the county in which said real estate is situated may, upon petition of any person who has an estate in possession, remainder or reversion in such real estate, and after notice and other proceedings as hereinafter provided and required, appoint one or more trustees, and authorize him or them to sell and convey such estate, or any part thereof, in fee simple, if such sale and conveyance appear to the court to be necessary or expedient; and such conveyance shall be valid and binding upon all parties." Section 2 provides for notice to, or representation of, all persons "who are or may become" interested, whether then in being or not, while section 3 requires that the trustee give bond and that he shall "receive and hold, invest or apply, the proceeds of any sale made by him for the benefit of the persons who would have been entitled to the real estate if such sale had not been made," and places the administration of the trust thus created under the jurisdiction of the probate court for the county in which the real estate was situated. The power of the legislature to enact such a law is not questioned, but it is claimed that the plaintiff has not entitled himself to relief under the statute by his allegation that his interest in the property is of small value to him as compared with his interest in the value as computed by the actuaries' tables.

While even since real estate could be conveyed by deed it has always been within the power of the holders of estates similarly situated, there being no trust, to sell the *res* and apportion the proceeds by agreement, it is apparent that the statute providing for a compulsory sale is a radical departure from the earlier law. "The purpose of the legislature was (1) to provide, in cases limited by the terms of the act, a method of sale which, upon adequate notice, should protect all parties and insure title in the purchaser, and (2) to preserve the property rights of each person interested in the proceeds of the sale in a form which approximates as nearly as may be his or her rights in the property sold." *Donovan* v. *Smith, ante,* 83. The statute was designed to meet those instances where the rigidity of the earlier law worked such injustice to the parties as to call for a remedy as against unreasonable holders. That the legislature, however, fully appreciated the need of a limitation to the application of the remedy is made plain by the requirement that the sale must be predicated upon a finding of the court that such sale is necessary or expedient. The petitioner is not invested, as in partition, with a remedy as a matter of right. *Spaulding* v. *Wood-*

*ward,* 53 N. H. 573, 575; *Hale* v. *Jaques,* 69 N. H. 411, 412. The facts that the act is an innovation, that the legislature did not extend the remedy as a matter of right, but that its application was limited to cases of necessity or expediency, tend to show that the legislature did not have in mind the ruthless disturbance of testamentary provisions for the widow and dependents of a testator, but intended rather that the power bestowed should be exercised cautiously in cases where, having in mind the rights of all parties, justice requires a sale of the *res* and the substitution of some other form of investment.

A petition, therefore, lies under Laws 1893, *c.* 19, for an order of sale of the property in fee, the burden resting upon the petitioner to clearly establish the necessity or expediency of such an order. This fact is to be found upon all the competent evidence, including the advantages and disadvantages of such a sale to all parties interested. It does not follow, however, that the petitioner is called upon to set up in his petition the advantages or disadvantages of the sale to the other interested owners. The allegation of the advantage to him is sufficient, since it cannot be said as a matter of law that the advantage to him in the absence of any evidence of disadvantage to the other parties is not sufficient to warrant a finding of the necessity or expediency of a sale.

That the legislature did not intend, however, to invest the court with power to compel the division and distribution of the proceeds of the sale is evident from the language used. The appointment of a trustee rather than an agent to make the sale is significant. The act expressly provides that this trustee "shall receive and hold, invest or apply, the proceeds . . . for the benefit of the persons who would have been entitled to the real estate if such sale had not been made," and places the administration of the trust in the jurisdiction of the probate court. Had the legislature intended that the trustee should go further and distribute, such a power would not have been left to inference. The full legislative purpose appears to have been accomplished by providing for sale and reinvestment without further invading the province of the testator, who is presumed to have apportioned his bounty, and to have provided for its distribution, as he deemed best. Whether there should be substituted judicial, in place of testamentary, determination of the question whether the proceeds should be distributed in cases of necessity or expediency in order to correct testamentary mistakes, or to relieve misfortune due to changed conditions, still remained a legislative problem.

Laws 1913, *c.* 21, in amendment of P. S., *c.* 243, s. 1, permits a petitioner to make parties to a proceeding for partition "a tenant for life or for years, or a tenant by the courtesy of the entire real estate or any part thereof or whoever may be entitled to a contingent or vested remainder or reversion or any executory interest in the entire real estate or any part thereof or any lien-holder on the entire real estate or any part thereof"; ss. 2 and 3 bestow upon the court power to "determine the respective interests of all the parties," but does not materially modify the provisions pertaining to distribution. By the terms of this amendment, s. 1, partition may be had only by "persons, having or holding real estate with others, in possession, reversion or remainder," that is, only by persons holding with others estates of the same class. Had this statute been designed to provide for the sale of the *res* in fee and for the ascertainment of the values of all interests, whether vested, contingent or executory, and the distribution of the proceeds, it is fair to assume the legislature would have addressed its efforts to amending Laws 1893, *c.* 19, which already provided for such sale, and not to the amendment of the statute of partition. Certainly more apt language would have been used.

By the use of the words "pine growth" the testator evidently intended the trees exclusive of the land. Such is the natural import and popular signification of the words. *Perkins* v. *Mathes*, 49 N. H. 107, 110; *Sanborn* v. *Sanborn*, 62 N. H. 631, 643; *Reynolds* v. *Jones*, 78 N. H. 84, 86; *Fowler* v. *Ladd*, 80 N. H. 44. This construction is confirmed by the fact that the testator bequeaths it with the personal property to his children other than Harry, to take effect in possession, not upon his death, as does the real estate, but upon the wife's death, as does the personal property. Harry, therefore, takes a life estate in the land subject to the rights of the owners of the growth.

The plaintiff cannot maintain proceedings for partition against these defendants under P. S., *c.* 243, as amended. Proceedings under Laws 1893, *c.* 19, lies for the sale of the *res* but not for the distribution of the proceeds, which, in the absence of testamentary provision to the contrary or an agreement among the parties, must be held in trust for the benefit of the parties according to their several estates and interests in the real estate sold. *Donovan* v. *Smith, supra.*

*Case discharged.*

All concurred.